IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 1:10-CR-00355 |
| v. : | (Chief Judge Kane) |
| ISAN CONTANT : | |
|     Defendant : | |

# MEMORANDUM

On December 15, 2010, a grand jury charged Defendant Isan Contant with conniving, conspiring, or taking any other action, designed to prevent and hamper or with the purpose of preventing and hampering his departure from the United States in violation of 8 U.S.C. § 1253(a)(1)(C). (Doc. No. 1.) Defendant pleaded not guilty on December 21, 2010. (Doc. No. 10.) The United States filed a motion in limine on February 1, 2011 (Doc. No. 14), and Defendant filed a motion in limine on February 3, 2011 (Doc. No. 15). After hearing arguments on the motions, the United States withdrew its motion on February 7, 2011, and the Court granted Defendant's motion in limine on that same day. Following a colloquy with the Court on February 7, 2011, the Defendant entered a knowing, voluntary, and intelligent waiver of his right to a trial by jury and elected to proceed with a bench trial. Trial commenced following the colloquy. At the close of the United States of America's case-in-chief, Defendant moved for a judgment of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure. The Court reserved judgment on the motion pursuant to Rule 29(b). After introducing three exhibits, the Defense rested without calling any witnesses. On February 18, 2011, the Court issued an order denying Defendant's motion for judgment of acquittal. (Doc. No. 25.) Now, upon consideration of all the evidence, the Court concludes that the United States has established

Defendant's guilt beyond a reasonable doubt, and finds Defendant guilty of violating 8 U.S.C. § 1253(a)(1)(C).

## I. ELEMENTS

To establish a violation of 8 U.S.C. § 1253(a)(1)(C) the United States must prove beyond a reasonable doubt that: (1) a final order of removal was outstanding against Defendant; (2) Defendant was a deportable alien as defined by 8 U.S.C. § 1227(a); and (3) Defendant connived or conspired, or took any other action, designed to prevent or hamper or with the purpose of preventing or hampering his departure. 8 U.S.C. § 1253(a)(1)(C). The third element contains a specific intent mens rea requirement. Id. A specific-intent crime is "one whose definition requires a special mens rea above and beyond that which is required for the actus reus of the crime." United States v. Starnes, 583 F.3d 196, 209 (3d Cir. 2009) (quoting United States v. Dollar Bank Money Mkt. Account No. 1591768456, 980 F.2d 233, 237 (3d Cir. 1992)). That is, the third element requires both that Defendant acted in such a way as to prevent or hamper his departure and that he intended his actions to have that effect.

## II. FINDINGS OF FACT

### A. Final Order of Removal

At trial the United States introduced evidence establishing beyond a reasonable doubt that a final order of removal was in place as to Defendant. The evidence showed that on June 14, 2010, the Immigration Court ordered Defendant removed from the United States. (Government Exhibit 1.) On September 10, 2010, Defendant's appeal to the Board of Immigration Appeals was dismissed. (Government Exhibit 5.) As a result, the order of removal became final on that date. See 8 U.S.C. § 1101(a)(47)(B)(I); 8 C.F.R. § 1241.1(a); see also Dorelien v. Ashcroft, 317

F.3d 1314, 1315 (11th Cir. 2003). Defendant filed a motion for stay of that order with the Third Circuit Court of Appeals, which that court denied. Contant v. Attorney Gen., No. 10-3736 (3d Cir. October 8, 2010). The United States Supreme Court denied Defendant's application for stay of removal on October 22, 2010. (Government Exhibit 10.) The Board of Immigration Appeals issued an order denying Defendant's I-360 petition on November 8, 2010, finding Defendant had failed to state a prima facie case that his application was approvable. (Government Exhibit 12.) As explained in further detail in this Court's order denying Defendant's motion for acquittal (Doc. No. 25), no automatic stay was in place on either November 1, 2010, or November 29, 2010. Therefore, the Court concludes that the United States has proven beyond a reasonable doubt that there was a final order of removal in place as of November 1, 2010, and through November 29, 2010.

      **B.**      **Defendant Was Deportable**

At trial the United States produced evidence sufficient to establish beyond any reasonable doubt that Defendant was a deportable alien as defined by 8 U.S.C. § 1227(a). An alien is "any person not a citizen or national of the United States." See Miller v. Albright, 523 U.S. 420, 422 (1998). An alien is deportable under 8 U.S.C. § 1227(a), for, inter alia, after admission as a nonimmigrant, remaining in the United States longer than permitted. 8 U.S.C. § 1227(a)(1)(B). The United States introduced evidence demonstrating that Defendant arrived in the United States on March 20, 2004. (Government Exhibit 17.) Defendant's arrival record indicates his admission expired on September 19, 2004. (Government Exhibit 17.) More than six years have passed since Defendant's admission expired, and as Defendant's arrest record indicates, Defendant has been living in the United States during that time. (Government Exhibit 15A at

3

61-68.) Accordingly, the Court is satisfied that the United States has proved beyond a reasonable doubt that Defendant is deportable under 8 U.S.C. § 1227(a).

### C. Defendant Acted with the Purpose of Preventing Departure

At trial the United States established beyond any reasonable doubt that Defendant acted with the purpose of preventing his removal from the United States, and indeed did prevent his removal from the United States, on November 1, 2010, and November 29, 2010. As shown in the tapes of the two attempted removals, Defendant repeatedly stated that he would not return to Trinidad and Tobago and explicitly stated that he was acting to prevent his removal. (Government Exhibit 21A, 21B.)

When the immigration officials attempted to deport Defendant on November 1, 2010, Defendant refused to exit their vehicle when he arrived at the airport. (Government Exhibit 21A.) Instead, Defendant went limp, refusing to walk into the airport or stand up and requiring immigration officials to drag him into the airport where they were able to procure a wheelchair for Defendant. (Government Exhibit 21A.) Defendant refused to walk to the aircraft, and immigration officials were forced to bring him to the flight on a wheelchair. (Government Exhibit 21A.) Once they reached the plane, officers were forced to physically carry Defendant to his seat. (Government Exhibit 21A.) After being seated for a few moments, Defendant stood up of his own volition and requested that the flight attendant permit him to speak to the captain. (Government Exhibit 21A.) After being told that he had an outstanding order of removal, Defendant informed immigration officials that he was "not going back," that he was "not going in that seat," and said he would "walk off" the plane. (Government Exhibit 21A.) After being told his actions could constitute a crime, Defendant told immigration officials to "charge me . . .

4

and let the courts figure it out." (Government Exhibit 21A.)  He then walked off the airplane, indicating to the Court that his refusal to walk to the plane was an effort designed to hamper his removal.  (Government Exhibit 21A.)

During the second attempted removal on November 29, 2010, immediately upon boarding his removal flight Defendant demanded to speak with the captain.  (Government Exhibit 21B.)  When the immigration officials directed him to his seat on the plane, Defendant clutched another seat and refused to release it, forcing three immigration officials to pull him off and carry him to his seat.  (Government Exhibit 21B.)  As the immigration officials carried Defendant down the aisle of the plane, Defendant repeatedly demanded to speak to the captain and shouted that he had a stay of removal.  (Government Exhibit 21B.)  After reaching his seat, Defendant informed immigration officials repeatedly that he was "not sitting down" and repeatedly attempted to leave his seat.  (Government Exhibit 21B.)  While struggling with immigration officials he declared that he "wasn't cooperating with shit," and when told by immigration officials to sit down he told them, "press charges, no, I want to go to jail." (Government Exhibit 21B.)  He repeatedly stated that he was not cooperating and demanded to speak to the captain and repeatedly told the immigration officials to press charges.  (Government Exhibit 21B.)  Defendant told immigration officials to "get [him] off" the flight and that he was not going to Trinidad and Tobago.  (Government Exhibit 21B.)  He further informed immigration officials "I'm hindering, I'm hindering my removal."  (Government Exhibit 21B.)  After engaging in an extended argument with immigration officials regarding his immigration status and his use of profanity, Defendant declared "real talk y'all, real talk, lock me up, if that's how you feel, lock me up."  (Government Exhibit 21B.)  After making further protestations

5

regarding his immigration status and his fear of returning to Trinidad and Tobago, Defendant asked immigration officials "why don't y'all charge me? I'm hindering. I'm clearly hindering." (Government Exhibit 21B.) He later threatened, "It's going to be five – how many hours in the sky? Y'all want to play around? Alright." (Government Exhibit 21B.) He further demanded "indict me, indict me." (Government Exhibit 21B.) After being told to sit down, Defendant repeatedly stated "I'm not sitting down . . . I'm not sitting down on the plane," and resisted efforts to have him seated. (Government Exhibit 21B.) After waiting some time to speak to the captain, Defendant began to exit his seating row saying "real talk, I'm about to get off this plane." (Government Exhibit 21B.) He further threatened "Yo captain, it's about to get real ugly up in here, real talk, real talk. . . . You've got to think about your passenger's safety and all that crazy shit." (Government Exhibit 21B.) After a few moments, the captain ordered Defendant removed from the plane. (Government Exhibit 21B.)

In light of this evidence the Court is persuaded that the United States proved beyond a reasonable doubt that Defendant took action designed to prevent or hamper or with the purpose of preventing or hampering his departure from the United States.

## III.   CONCLUSION

Upon consideration of all the evidence and witness testimony introduced at trial, the Court concludes that the United States has met its burden and proved beyond a reasonable doubt that Defendant is guilty of violating 8 U.S.C. § 1253(a)(1)(C). Although Defendant may have honestly, although mistakenly, believed he had a pending stay of removal, for the reasons outlined in this Court's order denying Defendant's motion for judgment of acquittal (Doc. No. 25), Defendant's belief that he was entitled to an automatic stay of removal will not serve to

absolve him of criminal liability.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 1:10-CR-00355 |
| v. : | (Chief Judge Kane) |
| ISAN CONTANT : | |
|     Defendant : | |

### ORDER

**NOW**, on this 23rd day of February 2011, **IT IS HEREBY ORDERED THAT** Defendant is found **GUILTY** of conniving or conspiring or taking any other action, designed to prevent or hamper or with the purpose of preventing or hampering his departure in violation of 8 U.S.C. § 1253(a)(1)(C) as charged in his indictment (Doc. No. 1.)

                                            S/ Yvette Kane
                                            Yvette Kane, Chief Judge
                                            United States District Court
                                            Middle District of Pennsylvania