# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ISAN CONTANT, | : | |
|     Petitioner | : | No. 1:10-cr-00355 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| UNITED STATES OF AMERICA | : | |
|     Respondent | : | |

## MEMORANDUM

Before the Court is Petitioner Isan Contant's petition for a writ of error <u>coram nobis</u> (Doc. No. 60), seeking relief from a guilty verdict entered against him by this Court on a charge of hindering his own removal from the United States in violation of 8 U.S.C. § 1253(a)(1)(c). For the reasons that follow, the Court will deny the petition.

## I.   BACKGROUND

Petitioner Isan Contant, a citizen and national of Trinidad and Tobago, legally entered the United states in March 2004 with a temporary visa. (Doc. No. 53, Trial Transcript, at 24:23-25.) His legal admission expired on September 19, 2004. (<u>Id.</u> at 25:9-11.) In 2007, he pleaded guilty to possession of a controlled substance in the third degree in violation of New York criminal law and was sentenced to one year imprisonment. (Govt. Trial Ex. 6 at 2; Govt. Trial Ex. 8.) In December 2007, Petitioner was placed into immigration removal proceedings. (Govt. Trial Ex. 3.) He was subsequently taken into immigration custody in March 2008 and ordered detained without bond.[1] <u>See</u> <u>Contant v. Holder</u>, 352 F. App'x 692, 693 (3d Cir. 2009).

---

[1] Upon a redetermination hearing in May 2008, an immigration judge denied release on bond. The Board of Immigration Appeals affirmed the immigration judge upon a finding that Petitioner had failed to demonstrate that he was not a danger to the community. <u>See</u> <u>Contant v. Holder</u>, 352 F. App'x 692, 693 (3d Cir. 2009).

In June 2008, he filed an I-360 petition[2] with the United States Citizenship and Immigration Services (USCIS), on the grounds that he was a battered spouse seeking to adjust his immigration status. (Govt. Trial Ex. 6.) In August 2009 the USCIS denied his I-360 because due to his criminal history,[3] he could not establish that he was a "person of good moral character." (Id.) Petitioner filed a motion with the USCIS to reopen or reconsider that decision, which the USCIS denied on July 8, 2010. (Govt. Trial Ex. 7.) On June 14, 2010, while Petitioner's USCIS motion to reconsider was pending, the Immigration Court in York, Pennsylvania, predicted he could not show his visa petition was prima facie approvable because he could not show good moral character, and ordered Petitioner removed from the United States to Trinidad and Tobago. (Govt. Trial Ex. 1.) Petitioner appealed that decision to the Board of Immigration Appeals (BIA), which dismissed his appeal on September 10, 2010. (Govt. Trial Ex. 5.) As a result, the order of removal became final on that date.[4] (See Doc. No. 27 (citing 8 U.S.C. § 1101(a)(47)(B)(I); 8 C.F.R. § 1241.1(a); Dorelien v. Ashcroft, 317 F.3d 1314, 1315 (11th Cir. 2003)).) Subsequently, on November 1 and 29, 2010, Petitioner prevented attempts from immigration officials to remove him. (See Doc. No. 27; Govt. Trial Ex. 21.)

---

[2] An I-360 petition is a form that relatives of United States citizens must file in order to obtain immigrant status based on their qualifying relationship to a citizen. See 8 C.F.R. § 204.1(a)(3).

[3] In finding that Petitioner could not show the requisite "good moral character," the USCIS summarized his criminal history which, in addition to the 2007 felony conviction, contained other felony arrests that did not result in conviction. The USCIS noted that even if such arrests did not result in a conviction, it was appropriate to consider them in its determination. (See Govt. Trial. Ex. 6.)

[4] Petitioner filed additional appeals to the United States Court of Appeals for the Third Circuit and other petitions for relief in the district court, but they were uniformly denied. (See Doc. No. 62 at 8-10.)

On December 15, 2010, a grand jury issued a one-count indictment charging Petitioner with hindering removal in violation of 8 U.S.C. § 1253(a)(1)(c). (Doc. No. 1.) The Court held a non-jury trial on February 7, 2011. Following the United States' presentation of its case-in-chief, Petitioner orally moved for a judgment of acquittal on the ground that, inter alia, no final order of removal existed in November 2010, because he was entitled to a stay of removal during that time.[5] (Doc. No. 25.) In denying Petitioner's motion, the Court noted that although it questioned its jurisdiction to review the underlying orders of the immigration judge and the BIA, it found, consistent with the earlier determination of the USCIS, that Petitioner's newest petition was not prima facie valid and therefore he was not entitled to a stay of removal, because he could not establish "good moral character." (Id.) Specifically, the Court wrote "as with the previous I-360 petitions submitted by Defendant, Defendant's . . . petition is not prima facie valid because, as found by the [BIA], Defendant was unable to make a showing that he is a person of good moral character as required[.]" (Id. at 3.) The Court found Petitioner guilty of hindering the two November 2010 removal attempts, and sentenced him to fourteen months' imprisonment. (Doc. Nos. 27, 45.) Petitioner appealed the verdict to the Third Circuit, who similarly concluded that his petition was not prima facie valid, pointing in particular to the USCIS' earlier determination that he could not establish "good moral character." (Doc. No. 59-1.) See also United States v. Contant, 467 F. App'x 141, 142 (3d Cir. 2012). According to the United States, Petitioner was

---

[5] Specifically, 8 U.S.C. § 1229a(c)(7)(C)(iv) provides an automatic stay of removal proceedings, but only to individuals who are "qualified aliens" as set forth in 8 U.S.C. § 1641(c)(1)(B). In order to be a "qualified alien," a defendant must have "a petition pending which sets forth a prima facie case" pursuant to 8 U.S.C. § 1154. As discussed, the USCIS had previously determined in 2009 and 2010 that, due to his criminal history, he could not present a prima facie valid I-360 petition.

removed to Trinidad and Tobago on or around February 7, 2012.  (Doc. No. 62 at 2.)

On January 30, 2012 the BIA denied another motion to reopen by Petitioner as barred by time and numerical limitations.  (Doc. No. 60 at 13.)  It appears that on November 27, 2012, the Third Circuit granted an unopposed motion by the United States government to remand the record to the BIA.  (Id.)  In the United States' motion to remand, it indicated that "[Petitioner] proffered a January 17, 2012 I-797 Notice of Action from the [USCIS] stating that he had demonstrated prima facie eligibility for a Form I-360 petition approval."[6]  (Id.)  Upon remand, on October 25, 2013, the BIA ordered that it would, pursuant to its sua sponte authority,[7] grant a motion to reopen in light of Petitioner's new evidence.  (Id.)  Specifically, the BIA stated that "Notwithstanding [Petitioner's] current absence from the United States, we now find it appropriate to remand the record under our sua sponte authority to allow the parties to present evidence regarding [Petitioner's] eligibility for a visa petition and, if necessary, for consideration of his application for adjustment of status . . . the record is remanded to the Immigration Court for further proceedings consistent with the foregoing decision."  (Id.)

On April 7, 2014, following the BIA's order reopening Petitioner's proceedings, Petitioner filed a motion for a writ of error coram nobis and an application to proceed in forma

---

[6] It is not clear from the BIA order, nor from Petitioner's motion for a writ of error coram nobis, precisely what new information, if any, the USCIS used in order to contradict its earlier findings that Petitioner could not demonstrate prima facie eligiblilty for I-360 petition approval.

[7] The BIA may, at any time, exercise its discretion to reopen removal proceedings sua sponte.  See 8 C.F.R. § 1003.2(a); Patel v. Attorney Gen. of U.S., 442 F. App'x 724, 725 (3d Cir. 2011).  Sua sponte reopening is "an extraordinary remedy reserved for truly exceptional situations."  Id. at 725.

pauperis (IFP) in this Court. (Doc. Nos. 60, 61.) He primarily contends that the BIA's reopening of his proceedings served to vacate his original removal order and, accordingly, invalidated his conviction for hindering removal. (Doc. No. 60.) He also asserts that in light of the BIA order, the Court must conclude that he was entitled to an automatic stay of removal in November 2010, further invalidating his conviction for hindering a final order of removal. (Id.) He alternatively argues that he was provided ineffective assistance by his trial and appellate counsel. (Id.) After the United States responded with its brief in opposition, the Court granted Petitioner's IFP motion and gave him additional time to respond to the United States' arguments. (Doc. No. 63.) Petitioner filed his reply brief on July 7, 2014. (Doc. No. 64.) Accordingly, the motion is fully briefed and ripe for disposition.

## II. LEGAL STANDARD

A writ of error coram nobis "is an extraordinary remedy." United States v. Rhines, 640 F.3d 69, 71 (3d Cir. 2011). It is used to attack allegedly invalid convictions which have continuing consequences, when the petitioner has served his sentence and is no longer "in custody" for purposes of 28 U.S.C. § 2255. United States v. Stoneman, 870 F.2d 102, 105-06 (3d Cir. 1989). A court's jurisdiction to grant such relief is of limited scope, and the standard for obtaining it is more stringent than that applicable on direct appeal or in habeas corpus. Rhines, 640 F.3d at 71. Errors which could be remedied by a new trial do not usually come within the writ. Id. Rather, the error must be fundamental and "go to the jurisdiction of the trial court, thus rendering the trial itself invalid." Id.

However, such relief is appropriate only "to correct errors for which there was no remedy available at the time of trial and "where 'sound reasons' exist for failing to seek relief earlier."

Mendoza v. United States, 690 F.3d 157, 159 (3d Cir. 2012). This "sound reason" standard is even stricter than that used to evaluate Section 2255 petitions. Id. The United States Supreme Court has observed that "it is difficult to conceive of a situation in a federal criminal case today where a writ of coram nobis would be necessary or appropriate." Carlisle v. United States, 517 U.S. 416, 429 (1996). "Any proceeding which is challenged by the writ is presumed to be correct and the burden rests on its assailant to show otherwise." United States v. Cariola, 323 F.2d 180, 184 (3d Cir. 1963).

## III. DISCUSSION

The Court will first address Petitioner's contention that the sua sponte reopening of his proceedings by order of the BIA vacated his removal order and retroactively invalidated his conviction in this Court for hindering removal. The Court will then address Petitioner's assertion that he received ineffective assistance of counsel.[8]

### A. Motion to reopen

Petitioner's circumstances and his argument in support of his motion for a writ of error

---

[8] Additionally, the Court easily rejects Petitioner's claim for relief on the grounds that the trial court "never established jurisdiction to hear [the] case." (Doc. No. 60 at 6.) Specifically, Petitioner points to a portion of the Court's order on his oral motion for judgment of acquittal in which the Court stated that it was "skeptical" that it could review the underlying immigration order. (See Doc. No. 25 at 3-4.) Petitioner states that the "existence of a valid order of removal is a necessary element of a Hindering Removal offense . . . [and] the Court never established jurisdiction to review that element of the charged offense." (Doc. No. 60 at 6.) Petitioner misunderstands that aspect of the Court's earlier order. The Court did not express skepticism that it had jurisdiction to conduct his criminal trial and render a verdict; rather, it merely expressed skepticism that it could review the validity of the removal order because 8 § U.S.C. 1252(b)(7) provides that a challenge to the validity of a removal order in a criminal proceeding under Section 1253(a) must be through the filing of a separate motion prior to trial, and Defendant filed no such motion. There is no merit to the contention that the Court did not have jurisdiction to conduct his criminal proceedings.

coram nobis are unique; indeed, the Court found no case law addressing an identical situation. In seeking a writ of error coram nobis, Petitioner argues that the BIA's reopening of his case in October 2013 served to vacate the original 2010 final removal order and therefore also retroactively invalidated his 2011 conviction for hindering removal, because a "final order of removal" in an essential statutory element. See 8 U.S.C. § 1253(a). Petitioner also argues that the 2013 order of the BIA conclusively establishes that he was entitled to a stay of removal at the time he was found to have illegally hindered removal, thereby further invalidating his conviction for hindering a final order of removal. The United States argues that error coram nobis relief is unjustified under the circumstances because "the motion to reopen was clearly based on recent happenings and had no effect upon the prior proceedings, [and accordingly] there is no fundamentally unjust error of fact that was unknown at the time of trial which would have altered the outcome of the challenged proceedings had it been known." (Doc. No. 62 at 11.)

Petitioner relies on the holding of the United States Court of Appeals for the Seventh Circuit in Bronisz v. Ashcroft, 378 F.3d 632, 637 (7th Cir. 2004), in which the Court held in a very different context that "the grant of a motion to reopen vacates the previous order of deportation or removal and reinstates the previously terminated immigration proceedings." Bronisz was primarily concerned with "whether the filing of a motion to reopen is itself part of the underlying immigration proceedings or more appropriately characterized as the commencement of a new proceeding altogether."[9] Bronisz, 378 F.3d at 636. Bronisz did not

---

[9] Specifically, Petitioner in Bronisz was ordered to depart voluntarily sometime around 1990, but he did not leave the country. Id. at 633. Eventually, in 2000, his proceedings were reopened. Id. at 634. However, the immigration judge subsequently ordered that Bronisz be deported and the BIA affirmed in November 2002, thereby rendering his deportation order final. Id. at 634-36. Bronisz sought review of the decision with the Seventh Circuit. Under the

address whether a motion to reopen also necessarily invalidates a conviction for hindering removal.

Similarly, the Third Circuit has utilized the Bronisz rule, but typically in the context of determining whether it could review an order of removal during pending removal proceedings – a question not raised by Petitioner. See, e.g., Mebuin v. Attorney Gen. of U.S., No. 12-4268, 2014 WL 2853914 (3d Cir. June 24, 2014); Salmon v. Attorney Gen. of U.S., 476 F. App'x 749 (3d Cir. 2012). For example, in Mebuin, the petitioner moved the Third Circuit to review the BIA's decision affirming the immigration court's denial of his request for a continuance of removal proceedings. Mebuin, 2014 WL 2853914, at *1. After filing his petition to the Third Circuit, but before the Court of Appeals acted, the BIA granted a motion to reopen, and remanded the matter to the immigration judge to give Petitioner the opportunity to present additional grounds for relief. Id. Noting that "this Court's jurisdiction is limited to final orders of removal," the Third Circuit found that the the BIA order was no longer final, and that it therefore lacked jurisdiction to review the order. Id.; see also Thomas v. Attorney Gen. of U.S., 625 F.3d 134 (3d Cir. 2010) (discussing when a motion for reconsideration vacates an earlier order of the BIA).

---

relevant provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), the Seventh Circuit determined that it did not have jurisdiction to review the immigration judge's decision if the November 2002 order was a "final order of exclusion or deportation entered more than 30 days after September 30, 1996, in a case commenced before April 1, 1997." See IIRIRA § 309(c)(4). The Seventh Circuit therefore needed to determine if Petitioner's case was one that commenced prior to April 1, 1997; if it had, the Court did not have jurisdiction to review the case. The Seventh Circuit held that the grant of the motion to reopen in 2000 and the subsequent 2002 final deportation order were part of the original proceedings, and did not constitute the commencement of a new proceeding altogether. Bronisz, 378 F.3d at 637. Accordingly, the case was one that commenced prior to April 1, 1997, and the Court of Appeals found that it did not have jurisdiction to review the deportation order.

The Court finds these issues distinct from those raised by Petitioner. In <u>Mebuin</u> and <u>Salmon</u>, the Third Circuit was simply tasked with determining whether an order was "final" for purposes of appellate review during ongoing removal proceedings. Neither court was faced with the unique question presented by Petitioner's motion: whether the BIA's <u>sua sponte</u> grant of a motion to reopen for further evidence long after the removal proceedings originally ended both vacates the removal order and also retroactively nullifies a conviction for hindering removal under 8 U.S.C. § 1253(a)(1)(c). Accordingly, the Court finds that the rule applied in <u>Mebuin</u> and <u>Bronisz</u> is not necessarily dispositive to Petitioner's motion, and the Court must look elsewhere for guidance.

The Court reiterates that it found no court in the Third Circuit or in any other jurisdiction that has addressed Petitioner's contention that a <u>sua sponte</u> motion to reopen following termination of removal proceedings retroactively nullifies an earlier conviction for hindering removal. However, the Court has found an analogous line of cases from persuasive authority that suggests that Petitioner's contention should be rejected. Specifically, the United States Courts of Appeal for the First, Second, and Fourth Circuits have held that where a motion to reopen immigration proceedings erases an earlier voluntary departure order, it does not also retroactively nullify the alien's previous violation of that now-vacated order.

For example, in <u>DaCosta v. Gonzales</u>, the petitioner was a native and citizen of Brazil who filed an application for political asylum and withholding of removal with the Immigration and Naturalization Service. 449 F.3d 45 (1st Cir. 2006). The immigration judge found the petitioner removable, and denied her application. <u>Id.</u> at 47. The immigration judge also ordered voluntary departure in lieu of removal, but informed the petitioner that if she failed to depart by

9

October 13, 1998, she would be subject to removal without further notice. Id.  The BIA subsequently granted an extension to her voluntary departure date, but warned her that, pursuant to 8 U.S.C. § 1229c(d), if she failed to depart within the specified time, she would be "ineligible for a period of 10 years for any further relief including adjustment of status." Id.  The petitioner did not depart within the specified time period. Id.  However, in 2002 the BIA granted a motion to reopen her immigration case. Id. at 48.  Although it reopened the case, the BIA ultimately concluded that the petitioner was "statutorily ineligible for adjustment of status because she had violated an order to depart" and ordered her removed to Brazil. Id.

  The petitioner then petitioned the First Circuit for review, and argued that she did not violate the voluntary departure order because by reopening her case, the BIA effectively vacated the prior voluntary departure order, and thus, there was thus no order to violate. Id. at 50.  The First Circuit disagreed that the reopening retroactively nullified her violation of a final departure order, and found that "[the petitioner] places too much significance on the BIA's order reopening her case . . . [a]lthough the BIA's reopening of the case had the legal effect of vacating the BIA's June 6, 2002 order, it could not 'retroactively nullify' [the petitioner's] previous violation of the terms of that order." Id. at 50-51.  The Second and Fourth Circuits rejected similar arguments. See Singh v. Gonzales, 468 F.3d 135, 140 (2d Cir. 2006); Odogwu v. Gonzalez, 217 F. App'x 194, 198 (4th Cir. 2007) ("[T]hough granting a motion to reopen has the legal effect of vacating a prior voluntary departure order, it does not 'retroactively nullify' the consequences of a prior violation of a then valid voluntary departure order."); but see Orichitch v. Gonzales, 421 F.3d 595, 598 (7th Cir. 2005) (holding to the contrary).

  Although these cases concern the voluntary departure statute, 8 U.S.C. § 1229c, and not

the hindering removal statute under which Petitioner was convicted, the Court finds them instructive. Petitioner's argument – that he could not have hindered a final order of removal in 2010 because the removal order was retroactively nullified by the BIA motion to reopen in 2013 – is analogous to the position of the above-cited petitioners who argued that they could not violate the voluntary departure order because a subsequent motion to reopen vacated the earlier departure order and therefore nullified any violations of those departure orders. Here, Petitioner's removal order was final at the time he was found guilty of a violating 8 U.S.C. § 1253(a)(1)(c), and further, withstood multiple appeals. Even if the BIA's grant of a motion to reopen years later had the legal effect of vacating that removal order, the Court finds that it does not automatically and retroactively overturn his conviction under a then-valid and administratively final removal order. See Singh, 468 F.3d at 140. Stated another way, the Court does not conclude, as Petitioner asserts, that the 2013 reopening of his immigration proceedings to explore new evidence per se affects the legality of his 2011 conviction for hindering removal.

  Further, although Petitioner argues that the 2012 notice from the USCIS, which states that he has established prima facie eligibility for an I-360 petition, and which notice was referred to in the BIA order reopening his proceedings, conclusively establishes that a stay of removal should have been in place in 2010, the Court finds insufficient grounds in Petitioner's petition from which to draw that conclusion. The USCIS denied his 2009 I-360 petition as not prima facie valid and denied his subsequent motion for reconsideration in 2010. Accordingly, although he produced a new petition that the USCIS apparently found to be prima facie valid in 2012, it nonetheless remains that Petitioner did not have a pending valid petition in November 2010 as

required by the statute providing for a stay of removal.[10]  See 8 U.S.C. § 1641(c)(1)(B).

Moreover, the Court's conclusion that Petitioner has not at this time established that he was entitled to a stay of removal proceedings in 2010 is reinforced by the fact that the immediate effect of the BIA granting a motion to reopen in this matter is that the immigration court will merely reconsider his new evidence.  See Singh, 468 F.3d at 139-40 ("Motions to reopen are designed to allow consideration of circumstances that have arisen subsequent to the applicant's previous hearing . . . [t]he granting of a motion to reopen does not necessarily imply that the underlying application for relief will also be granted, only that it will be considered in light of whatever previously unavailable evidence is presented.").  The BIA order reopening his proceedings for further consideration does not determine the validity of Petitioner's arguments, but merely remands for consideration of new evidence, that is, Petitioner's 2012 Notice of Action from the USCIS.  Accordingly, neither the BIA or the immigration court have determined at this time that Petitioner is entitled to a visa or an adjustment of status.  Indeed, Petitioner himself admits that in its decision to reopen, "the BIA never outlined a legal reason for its decision to reopen, it simply invoked its sua sponte authority, gave a brief history of the case, and outlined what it would like done on remand to the immigration judge."  (Doc. No. 62 at 6.)  Because an immigration court with jurisdiction over the proceedings has not yet determined Petitioner is entitled to a change in immigration status, the Court finds Petitioner's assertion that

---

[10] The Court additionally notes that Petitioner has not provided to the Court the Notice of Action from the USCIS concluding he had a prima facie valid I-360 form, and has further not provided any details about the substance of his new I-360 petition such as the date he filed it or why the USCIS veered from its earlier analysis.  A writ of error coram nobis is an extraordinary remedy, and the Court is not inclined to grant such relief where, as here, the precise sequence of relevant events are hazy.  See Cariola, 323 F.2d at 184.  ("Any proceeding which is challenged by the writ is presumed to be correct and the burden rests on its assailant to show otherwise.").

the Court should find his conviction for hindering removal invalid based on the BIA's reopening to consider new evidence somewhat premature. See Fedorca v. Perryman, 197 F.3d 236, 240 (7th Cir. 1999) ("If [defendant's] motion to reopen his deportation proceedings had been successful, as it initially was, it would have abrogated the 1995 deportation order. But because the IJ reconsidered and reversed the grant, the 1995 order was preserved and consequently remains valid."); Mu Ju Li v. Mukasey, 515 F.3d 575 (6th Cir. 2008) ("[W]hen the BIA grants a motion to reconsider and—after considering the issues afresh – renders a new decision addressing the arguments raised, the original order has been vacated and a new order entered in its place.") (emphasis added). The Court is reluctant to make any conclusions about the validity of Petitioner's reinstituted immigration proceedings and his current immigration status, and will currently leave such determinations to the immigration court and the BIA.

For the foregoing reasons, the Court finds that Petitioner has not established that he was not subject to a valid, final order of removal when he was found to have hindered his removal, and the Court finds his retroactivity argument unavailing. Accordingly, the Court will deny the motion on these grounds.[11]

### B. Ineffective assistance of counsel

In the alternative, Petitioner alleges that his trial attorney Lori Ulrich provided ineffective

---

[11] Because the Court finds that Petitioner has not established that there was a fundamental error rendering his conviction invalid and therefore entitling him to error coram nobis relief, it will decline to address the United States' alternative argument that Petitioner is not entitled to relief because he has not exhibited "continuing consequences" on that conviction. (See Doc. No. 62 at 11.)

assistance of counsel in failing to challenge the Court's jurisdiction.[12] He also alleges that Ms. Ulrich was ineffective for failing to file a 8 U.S.C. 1252(b)(7) motion attacking the removal order. He further argues that his appellate counsel, Lawrence Kress, was ineffective when he failed to raise the issue of Ms. Ulrich's ineffectiveness on appeal.

To demonstrate that counsel was ineffective, a petitioner must meet the two-part test established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). The first prong requires a petitioner to "show that counsel's performance was deficient," by establishing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. In evaluating counsel's conduct, the Court adopts a "strong presumption" that the attorney's performance was reasonable. Id. at 687, 689.

The second prong of the Strickland test requires a petitioner to establish that "the deficient performance prejudiced the defense" by showing that "counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." Id. To show prejudice, a defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In assessing whether Petitioner has stated a claim for ineffective assistance of counsel, "a court can choose to address the prejudice prong before the ineffectiveness prong and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006) (citing Strickland, 466 U.S. at 668).

The Court has already rejected Petitioner's argument that the Court lacked jurisdiction,

---

[12] "The trial court never established its jurisdction to hear this case, and at no time did Ms. Ulrich ever file a motion to dismiss for lack of jurisdiction, despite the Court's expressed skepticism . . .". (Doc. No. 60 at 7.)

and concluded it was without merit.  (See Section III.A. n.8.)  Thus, the Court finds Petitioner's contention that counsel was ineffective for failing to raise the issue of jurisdiction meritless and, accordingly, that Petitioner was not prejudiced by counsel's conduct.  United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("[There is no] deprivation of effective counsel based on an attorney's failure to raise a meritless claim.").

The Court also finds no merit to Petitioner's allegation that Ms. Ulrich was ineffective for failing to file a motion for judicial review of his removal order.  Although the Court was skeptical that it could review the validity of the underlying order of removal at trial because counsel had not properly filed a Section 1252(b)(7) motion, it nevertheless still considered the merits of Petitioner's attack on the validity of the order and rejected Petitioner's arguments.  The validity of the removal order was again challenged on appeal, and the Third Circuit once again rejected the merits of Petitioner's challenge to the removal order.  (Doc. No. 59-1.)  Accordingly, Petitioner cannot establish that a properly filed Section 1252(b)(7) would have been successful in challenging the removal order prior to trial and that he was therefore prejudiced by counsel's failure to file it.

Additionally, although Petitioner argues that he was able to get the BIA to reopen his case vacating the removal order in 2013 and thus it follows that his counsel should have been able to do the same through a properly filed motion, the BIA reopening was, as discussed supra, based entirely on a 2012 notice of action provided by the USCIS, i.e., new information which was not available during Ms. Ulrich's allegedly ineffective representation.  (See Doc. No. 60 at 13.)  Accordingly, Petitioner has not established that there were any grounds available to counsel during her representation that would have resulted in a successful attack on the removal order,

and therefore he has not established that he was prejudiced by counsel's failure to file a Section 1252(b)(7) motion.[13] It necessarily follows that, because Petitioner has not established that he was prejudiced by trial counsel Ulrich's allegedly ineffective representation, he also cannot establish that he was prejudiced by appellate counsel Kress' failure on appeal to challenge the adequacy of trial counsel's representation.

## IV.     CONCLUSION[14]

For the foregoing reasons, Petitioner's motion for a writ of error coram nobis will be denied. An order consistent with this memorandum follows.

---

[13] Petitioner also states that his lawyers "could have argued prosecutorial misconduct in that the indictment was improvidently seeked[sic] and issued . . ." but he provides no factual support for this contention, and the Court accordingly finds the accusation without merit. (See Doc. No. 64 at 14.)

[14] Lastly, the Court notes that contrary to Petitioner's stated belief, no certificate of appealability is required if he wishes to appeal the Court's denial of his error coram nobis petition. See United States v. Baptiste, 223 F.3d 188, 189 n.1 (3d Cir. 2000).